# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CUSTOM HAIR DESIGNS BY SANDY, LLC, and SKIP'S PRECISION WELDING, LLC, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br>v.<br><br>CENTRAL PAYMENT CO., LLC,<br><br>　　　　　Defendant. | Civil Action No.: 8:17-CV-00310 |

## JOINT STIPULATION AND PROPOSED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DOCUMENTS

WHEREAS, Plaintiffs and Defendant in the above-captioned action (the "Action"), by and through their undersigned counsel, hereby stipulate and agree that the following Joint Stipulation Regarding Discovery of Electronically Stored Information and Hard Copy Documents shall apply to all discovery in the Action; and

WHEREAS, the Parties seek to facilitate the exchange of ESI and hard copy documents in the Action, pursuant to this Court's authority and with the consent of the Parties:

IT IS HEREBY ORDERED:

1. **DEFINITIONS**

　　1.1　"Document" or "Documents" shall have the meaning contemplated in Federal Rule of Civil Procedure 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

　　1.2　"ESI" is an abbreviation of "electronically stored information" and shall have the same meaning it has in Federal Rule of Civil Procedure 34(a)(1)(A).

1.3     "Extracted Text" means the text extracted from a Document, and includes all header, footer, and document body information.

1.4     "Load/Unitization File" means an electronic file containing information identifying a set of paper-scanned images, processed ESI, or Native Format files, as well as the corresponding Full Extracted Text or OCR text files, and containing agreed-upon extracted or user-created Metadata, as well as information indicating unitization (i.e., document breaks and document relationships such as those between an Email and its attachments). A Load/Unitization File is used to import all image, native, and text files and their corresponding production information into a document database. The Producing Party shall produce a load/unitization file ("load file") for all produced documents in accordance with specifications provided in Exhibit A.

1.5     "Metadata" means structured information about ESI that is created by the file system or application, embedded in the Document or Email, and sometimes modified through ordinary business use.

1.6     "Native Format" means the format of ESI in the application in which such ESI was originally created and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

1.7     "OCR" means the optical character recognition technology used to read paper Documents or electronic images of Documents and output such Documents to a searchable text format. The latter text is also referred to as the "OCR text" or simply "OCR."

1.8     "Party" or "Parties" means, individually or collectively, all plaintiffs and defendant in the Action, as well as any later added plaintiffs and defendants, including all of their respective officers, directors, and employees.

1.9     "Producing Party" means any Party or third party that produces hard copy or ESI Documents in this Action.

1.10    "Requesting Party" means any Party that serves a request for production of Documents in the Action.

1.11    "Responsive Document" means any Document that is responsive to any discovery request or subpoena served on a Producing Party in this Action and which a Producing Party has agreed or been ordered to produce, subject to the limitations set forth in the Local Rules, the Federal Rules of Civil Procedure, or Court order.

1.12    "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper Documents. For files produced as TIFF images, each page of a document shall be electronically saved as an image file, as outlined in Exhibit A.

2.  **SCOPE**

2.1     The procedures and protocols set forth in this Order shall govern the production format of ESI in the Action, unless the Parties agree in writing to change them or they are changed by the Court at the request of a Party. This Order does not define the scope of production, nor, unless specified below, the relevance of any particular information. Nothing in this Order establishes any agreement as to either the temporal or subject matter scope of discovery in the Action. The discovery requests, objections thereto, agreements of the Parties, and any Court orders shall govern the scope of documents to be produced. Nothing in this Protocol is intended to be inconsistent with or to exceed a Party's obligations under the Local Rules or the Federal Rules of Civil Procedure.

2.2     As outlined in Federal Rule of Civil Procedure 26(b)(2)(B), a Producing

Party need not provide discovery of ESI from sources that it identifies as not reasonably accessible because of undue burden or cost. If a Producing Party objects to production of particular ESI as not being reasonably accessible because of undue burden or cost, such Party shall describe the nature of the objection with reasonable particularity in the Party's responses and objections to the Requesting Party's request for production or via letter if the issue is unknown at the time of the responses and objections. The Parties shall promptly meet and confer thereafter in an attempt to resolve the issue concerning accessibility and, if no resolution is reached, seek appropriate relief from the Court as outlined in Federal Rule of Civil Procedure 26(b)(2)(B) and in accordance with Magistrate Judge Zwart's Civil Case Management Practices.

      2.3     Generally, the costs of producing ESI pursuant to this Protocol shall be borne by each Producing Party. Any Producing Party who produces ESI in TIFF format shall do so at their sole cost and expense, and such Producing Party hereby waives the right to seek reimbursement or taxing of such Tiffing costs pursuant to 28 U.S.C. § 1920, or any other state or federal cost recovery provision. If a Producing Party reasonably believes that producing particular ESI poses a particularly undue burden or cost as a result of the ESI not being reasonably accessible, such Party may object to the production of that ESI as provided for in Paragraph 2.2.

      2.4     The Parties do not waive any objections to the responsiveness, production, discoverability, possession, custody, control, or confidentiality of Documents, including (without limitation) objections regarding the burden, over-breadth, or relevance of any document requests, or any other objection under the Local Rules or Federal Rules of Civil Procedure. Nothing in this Stipulated Order shall be interpreted to require the disclosure of

information that is otherwise not discoverable under the Local Rules or Federal Rules of Civil Procedure.

2.5　If a member of a document family that has otherwise been determined to be responsive cannot technically be processed (e.g., unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Requesting Party by production of a Bates-labeled slipsheet that states "Technical issue—file cannot be processed"; the associated metadata for the file with the technical problem shall be produced if technically possible. A Requesting Party may thereafter raise with the Producing Party any questions or concerns, and the parties shall meet and confer to attempt to resolve any issues.

2.6　The Parties shall meet and confer in good faith in an effort to resolve any disputes that may arise under this Order, prior to seeking assistance from the Court, in accordance with Magistrate Judge Zwart's Civil Case Management Practices.

3. **PRODUCTION FORMAT**

3.1　<u>Format Guidelines</u>: The Parties shall produce paper Documents and ESI according to the specifications provided in this Order and Exhibit A hereto. The Parties agree to meet and confer in good faith if any of the technological specifications set forth in Exhibit A result in unforeseen technological issues.

3.2　<u>De-Duplication</u>: The Parties shall use reasonable, good faith efforts to avoid the production of duplicate ESI. The Parties agree that production of ESI documents globally de-duplicated to remove exact duplicate documents shall constitute production of documents as maintained in the ordinary course of business provided that a single copy of the responsive document or record is produced (the "Single Production Copy"). No Party shall

eliminate duplicates of hard copy or electronic documents by manual review. Exact duplicates shall be defined as ESI with exact MD5 or SHA-1 hash values. Where any such documents have attachments, hash values must be identical for both the document-plus-attachment(s) (including associated metadata) as well as for any attachment (including associated metadata) standing alone. For email the MD5 hash values should be calculated at the parent level and include the full body of any and all attachments as well as the "TO," "FROM," "CC," "BCC," "Date Sent," "Date Received," "Date Created," and "Date Modified" values in that calculation. When the Producing Party is globally de-duplicating across custodians, the Producing Party shall populate a field of metadata that identifies each custodian who had a copy of the produced document (the "duplicate custodian field") in addition to a separate field of data identifying the custodian whose document is produced.

3.3 <u>Documents To Be Produced Natively</u>: A Producing Party shall produce Microsoft Excel and other spreadsheet files, including comma or tab delimited text files, Microsoft Access, and audio and video files in Native Format except where such files are redacted in accordance with this Order. The production of Structured Data, which the Parties may, from time to time, agree is also to be produced in its Native Format, is governed by paragraph 3.4. The production Load Files shall contain a link to the produced Native Format files as specified in the "Native Link" Metadata field described in Exhibit A. Each electronic file produced in Native Format shall be assigned a unique Document Number as set forth in Paragraph 3.6, and for each a single page placeholder TIFF image branded with this unique Document Number, the phrase "PRODUCED IN NATIVE FORMAT", and the corresponding confidentiality designation under the Protective Order to be entered in the Action will be produced. No Party may attach to any pleading or any correspondence

addressed to the Court, Special Master, or any adverse or third Party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy of any produced native format document without ensuring that either the corresponding placeholder slip sheet is attached to the document or the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on the document.

Responsive ESI produced in Native Format shall be produced with all required Metadata contained in or associated with that file to the extent technologically possible consistent with Exhibit A. Extracted Text taken from natively produced files will be provided at a document level. There will be one text file per document, using the same name as the beginning Bates number (Document ID) of the document. The extracted text file for a document will reside in the same location (file directory) as the images for that document. The text file associated with any redacted document will exclude redacted text (i.e., the Producing Party will OCR the redacted image and replace the original extracted text).

If production in Native Format is necessary to decipher the meaning, context, or content of a document produced only in TIFF format, the Producing Party will honor a reasonable written request made in good faith and shall produce the document in native format within 14 days, unless such production would reveal material redacted in accordance with Paragraph 3.11. Where the document produced only in TIFF format that is requested in Native Format contains redactions, the Producing Party will produce a Near Native redacted copy of the document if possible. If the Responding Party is unable to produce a Near Native redacted copy of the requested document, the Parties will meet and confer to resolve the issue.

3.4     Structured Data.     To the extent a response to discovery requires production of discoverable electronic information contained in a database and the responsive data cannot reasonably be produced in either Excel or .csv format, in advance of producing such information, the Parties agree to meet and confer regarding the format of the production (e.g., commercial database, or some other agreed-upon format). The Responding Party will answer reasonable requests to explain any codes or abbreviations contained in the structured data through a meet-and-confer process.

3.5     Unitization: If a Document is more than one page, to the extent possible, the unitization of the Document and any attachments or affixed notes shall be maintained as they existed in the ordinary course of business when collected by the Producing Party. The original unitization shall be reflected in the image Load File.

3.6     Document Numbers and Confidentiality Designations for TIFF Images: Each page of a Document produced in TIFF file format shall have a legible, unique fixed-length numeric identifier ("Document Number") electronically "burned" onto the image at a place on the document that does not obscure, conceal, or interfere with any information originally appearing on the Document. The Document Number for each document shall be created so as to identify the Producing Party. To that end, each Party's Document Numbers shall have unique identifying names. If a Document is produced subject to a claim that it is Confidential or Highly Confidential under the Protective Order to be entered in the Action, each page of the Document shall have the appropriate confidentiality designation electronically "burned" onto the image at a place on the document that does not obscure, conceal, or interfere with any information originally appearing on the document.

3.7     Metadata Fields and Processing: The Parties are not obligated to populate

manually any of the fields in Exhibit A, with the exception of the following, which must always be populated: (a) BegBates, (b) EndBates, (c) Custodian, (d) Page Count, (e) Production Volume, and (f) Confidentiality. Additionally, the Parties must populate the following fields in Exhibit A if applicable: (a) BegAttach, (b) EndAttach, (c) MD5 or SHA-1 hash values, and (d) Duplicate Custodian (if Documents are being de-duped across custodians and a duplicate document exists). Metadata identified in Exhibit A shall be provided in a Concordance format delimited file as outlined in Exhibit A. With the exception of the fields which the parties have agreed to manually populate as noted above, nothing herein shall require a Producing Party to create or produce Metadata that does not exist in the data as kept in the ordinary course of business or is not reasonably or technically accessible. Unless otherwise specified, by producing metadata, the Producing Party affirms that such metadata came from its records, with the exception of the vendor-manually populated fields outlined above.

3.8  Production Media: The Producing Party shall produce Document images, Native Format files, Load Files, and Metadata on hard drives, CDs, DVDs, secure FTP, or other mutually agreeable media ("Production Media"). Production volumes of 10GB or less may be produced via FTP or other electronic transfer system, without a separate agreement; productions made via FTP or electronic transfer are not required to be supplemented with hard media containing the same Documents. Each piece of Production Media shall include a unique identifying label including the following information: (a) Name of Litigation and its case number; (b) Name of the Producing Party, (c) the date of the production, (d) production volume number, and (e) the Document Number ranges of the Documents in that production. To the extent that the Production Media includes any Confidential Information protected under any Protective Order to be entered by the Court, the label on such Production Media shall indicate

that the Production Media includes information so designated. Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Document Number range that is being replaced. All Production Media that is capable of write protection should be write-protected before production. All Production Media may be encrypted, with the Producing Party to provide a decryption key at the time of production.

3.9 Parent-Child Relationships: Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved during the processing and production of the Document.

3.10 Format for Hard-Copy (i.e., non-ESI) Productions and Static Image Files: The following applies to documents that exist only in hard-copy format or in static image file format and are therefore unavailable in native ESI form (e.g., documents scanned from hard copy, or documents maintained in static image format, like TIFF or PDF). All such documents that are amenable to being imaged should be produced in the same format specified for ESI. OCR will also be provided, if reasonably available, instead of extracted text to maximize text quality. Settings such as "auto-skewing" and "auto-rotation" will be turned on during the OCR process. Paper documents should be logically unitized for production (e.g. distinct documents will not be merged into a single document and single documents will not be split into multiple documents). The relationship among the documents, whether it be by folders, binders, or binder clips, should be maintained and reflected in the beginning and ending document and attachment fields. Any identification such as binder or folder labels will be scanned and produced as the first page of the document or grouping.

3.11 Redacted Documents: To the extent that a responsive document contains

privileged content or non-responsive Highly Confidential Material (as defined in the Stipulated Protective Order to be entered in the Action), the Producing Party may produce that document in a redacted form. Any redactions shall be clearly indicated on the face of the document, and each page of the document from which information is redacted shall bear a designation that it has been redacted. The designation shall make clear the reason for the redaction (i.e., "Redacted – Privilege"). The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this Paragraph. The production of a privileged document in a redacted form does not affect the Producing Party's obligation to properly document the assertion of privilege on a privilege log.

In the event that a Document requires redaction, the Parties agree that the native version need not be produced, full text may be replaced with OCR text that excludes the redacted material, and Metadata fields may be redacted if they contain information that may be redacted pursuant to this Paragraph 3.11. If a Document to be produced in Native Format contains information that may be redacted pursuant to this Paragraph 3.11, the Document may be produced by producing the Document either in redacted TIFF format, or in redacted Near Native Format, in the Producing Party's discretion. If modification of a native file is required for redaction purposes, metadata information associated with that file should remain unchanged unless it also requires redaction.

3.12 <u>Privilege Logs</u>: Parties shall produce a privilege log within 30 days of substantially completing their respective document productions. The privilege logs will be in conformity with the Federal Rules. The logs should be in PDF format and list, at minimum: "Bates range", "Privilege Asserted", "Document Date", "Document Author", "Recipients", "Subject/Title", "Redacted/Withheld." The privilege logs also shall contain a brief

description of the basis of the privilege asserted. If a privilege log contains more than 200 entries, the receiving party may request that a copy of the Privilege log be provided in Excel format. The Parties shall not be required to log attorney-client privileged or work-product materials relating to this lawsuit after the date of the Class Action Complaint was filed on August 8, 2017.

4. **PROCESSING SPECIFICATIONS**

    4.1 The Producing Party shall collect and process Documents using methods that preserve available data. The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to production:

    (a) All tracked changes and comments shall be maintained as last saved so that all changes to a Document are evident.

    (b) All Word Documents shall either include and show field codes for auto-date and auto-time fields or the vendor shall force off Auto Date when processing.

    (c) Author comments shall remain and be made visible.

    (d) Presenter notes shall be made visible.

    (e) Any other hidden text shall be expanded, extracted, and rendered in the TIFF file.

    4.2 <u>Time</u>: When processing ESI, CST should be selected as the time zone. When a metadata field includes a date and/or time, it shall be provided in the following format: mm/dd/yyyy HH:mm:ss.

5. **ADDITIONAL ISSUES**

    5.1 <u>Protocol For Agreeing on Custodians:</u> The Parties will exchange lists of individual custodians. Within three (3) days following a meet and confer on the Producing Party's responses and objections to a request for production, the Producing Party will identify its own

proposed individual custodians (including their title) to be used for a search of information potentially responsive to the request for production. The Parties will meet and confer to agree as to the individual custodians ("Agreed Individual Custodian(s)") to be used for a search of information potentially responsive to a request for production. If the Parties are not able to agree on the list of custodians after the meet and confer process, either Party may submit the dispute to the Court for resolution. Such dispute shall be raised with the Court in accordance with Magistrate Judge Zwart's Civil Case Management Practices.

The Parties shall search the relevant files for the Agreed Individual Custodians pursuant to the procedures set out herein. As to other potentially relevant individual custodians, the Parties shall take reasonable steps to preserve relevant ESI, but are not obligated to search and produce ESI except as provided herein. Provided, however, that if a Party wishes to rely on a non-public document that comes from an individual custodian's files and that individual is not an Agreed Individual Custodian, the Party must identify that individual custodian to the Requesting Party. Thereafter, the Parties shall meet and confer to discuss the scope of any search to be conducted on that individual custodian's files in an effort to locate potentially responsive information.

The Parties agree to meet and confer in good faith concerning any request to add additional custodians beyond the Agreed Individual Custodian(s).

5.2    <u>Protocol For Agreeing on Use of Search Filters</u>: The Parties will exchange lists of keyword search terms and date restrictions to be used to identify ESI potentially responsive to a request for production. Within three (3) days following a meet and confer on the Producing Party's responses and objections to a request for production, the Producing Party will identify proposed search terms and date restrictions to be used for a search of information

potentially responsive to the request for production. The Parties will meet and confer in an effort to agree on the search terms and date restrictions to be used to identify ESI potentially responsive to a request for production ("Agreed Date Restrictions And Search Terms"). If the Parties are unable to agree on the date restrictions and search terms for ESI after the meet and confer process, either Party may submit the dispute to the Court for resolution. Such dispute shall be raised with the Court in accordance with Magistrate Judge Zwart's Civil Case Management Practices. The Parties also agree to meet and confer in good faith concerning any request to add to or modify the Agreed Date Restrictions and Search Terms. Notwithstanding the foregoing, to the extent that counsel of record for either Party identifies responsive ESI not hit upon by keyword searches, all such non-privileged documents must be produced, subject to the Parties' objections to discovery requests.

      5.3    <u>Use of Predictive Coding</u>: Before any Party begins using Predictive Coding through technology assisted review ("TAR") as a means of identifying responsive and/or relevant documents, such Party shall advise the Requesting Party of its intention, whereupon the Requesting Party and the Party that intends to use Predictive Coding will meet and confer regarding the use of Predictive Coding.

      5.4    <u>Variance</u>: Any practice or procedure set forth herein may be varied by agreement of the Parties without order of the Court. Failure of the Parties to agree on any modifications may be raised with the Court as necessary and in accordance with the Federal Rules of Civil Procedure, the Local Civil Rules, and Magistrate Judge Zwart's Civil Case Management Practices.

6.    **CONFIDENTIALITY**

    Documents shall be subject to the terms of the Protective Order to be entered by the

Court, as well as Federal Rule of Civil Procedure 26(b)(5)(B).

7. **AMENDMENT OF ORDER**

Nothing herein shall preclude any Party from seeking to amend this Order in writing, provided, however, that no Party may seek relief from the Court concerning compliance with the Order until that Party has met and conferred in good faith with all Parties involved in the dispute.

Dated: January 2, 2018

| WAGSTAFF & CARTMELL, LLC | BAIRD HOLM LLP |
|---|---|
| /s/ *Tyler W. Hudson* <br> Tyler W. Hudson <br> Missouri Bar No. 53585 <br> Eric D. Barton <br> Missouri Bar No. 53619 <br> Melody R. Dickson <br> Missouri Bar No. 61865 <br> 4740 Grand Avenue, Suite 300 <br> Kansas City, MO 64112 <br> (816) 701-1100 <br> thudson@wcllp.com <br> ebarton@wcllp.com <br> mdickson@wcllp.com <br><br> ***Counsel for Plaintiffs*** | /s/ Kenneth W. Hartman <br> Kenneth W. Hartman (NE# 21954) <br> 1700 Farnam St Ste 1500 <br> Omaha, NE 68102-2068 <br> 402-344-0500 <br> khartman@bairdholm.com <br><br> David L. Balser (*pro hac vice*) <br> Jonathan R. Chally (*pro hac vice*) <br> Brandon R. Keel (*pro hac vice*) <br> Allison Hill White (*pro hac vice*) <br> KING & SPALDING LLP <br> 1180 Peachtree Street NE <br> Atlanta, GA 30309-3521 <br> 404-572-4600 <br> dbalser@kslaw.com <br> jchally@kslaw.com <br> bkeel@kslaw.com <br> awhite@kslaw.com <br><br> ***Counsel for Defendant*** |

**SO ORDERED.**

Dated: January 2, 2018

Hon. Cheryl R. Zwart
United States Magistrate Judge

# Exhibit A

1. **PRODUCTION LOAD FILES**

There will be two Load files accompanying all productions of paper documents and ESI:

- The first will be a Metadata import file with a .DAT file extension, in Concordance format delimited file, including ASCII 020 and 254 delimiters for column break and text qualifier, and new line as ASCII 174, that contains the agreed upon Metadata fields in UTF-8 encoding. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document.
- The second will be an image load file containing the document break instructions for the image base. The acceptable formats for the cross-reference files are .lfp and .opt.

**2. IMAGES**
- Produce Documents in Single Page Group IV TIFF.
- Image Resolution of 300 DPI.
- Images may be produced in black and white unless color images are necessary to decipher the meaning, context, or content of the document, or if black and white photocopying or conversion to TIFF format makes any substantive information contained in the document unintelligible.
- If a Receiving Party reasonably believes that a Document originally produced in black and white needs to be produced in color, it shall notify the Producing Party. To the extent the original document was in color, the Producing Party will honor reasonable requests made in good faith for either the production of the original document for inspection and copying or production of a color JPEG file image of the Document(s) within 14 days.
- File Naming Convention: Match Bates Number of the page.
- Insert placeholder image for files produced in Native Format (see Paragraph 3.3).
- Insert placeholder image for unprocessable technical-issue family members.
- Original Document orientation or corrected orientation shall be retained.

**3. SPECIAL FILE TYPE INSTRUCTIONS**
- Certain file types shall be produced in Native Format, as specified in Paragraph 3.3.
- If redactions are required, see production requirements specified in Paragraph 3.11.

**4. FULL TEXT EXTRACTION/OCR**
- Where available, produce the native extracted text for all file types (Redacted text will not be produced). In the event that a Document requires redaction, the Parties agree that the native version need not be produced, full text may be replaced with OCR text that excludes the redacted material and Metadata fields may be excluded if they contain redactable information.
- Production format: Single text file for each Document, not one text file per page. The relative path to this text file should be populated in the "Full Text" field listed in section 5 below.
- File Naming Convention: Match Beg Bates Number.

**5. ESI (AND PAPER TO THE EXTENT APPLICABLE) PRODUCTION METADATA FIELDS**
- BegBates: Beginning Bates Number.
- EndBates: Ending Bates Number.
- BegAttach: Beginning Bates number of the first document in attachment range in a document family range. Documents that are part of document families, i.e., containing parents and attachments should receive a value.
- EndAttach: Ending Bates number of the last document in attachment range in a document family range. Documents that are part of document families, i.e., containing parents or attachments, should receive a value.
- Custodian: Name of the Custodian of the Document Produced, to the extent reasonable and technically available. If the Document was collected from a centralized source, the Custodian field shall reference that centralized source.
- Duplicate Custodian: Identifying any and all unique custodians in whose files an exact duplicate Document was found.
- FileName: Filename of the original source ESL
- NativeLink: Relative path and filename to the produced Native Format file
- Subject: Subject line extracted from an Email message or calendar entry.
- Title: Title field extracted from the Metadata of a non-Email document.
- Author: Author field extracted from the Metadata of a non-Email document.
- From: From field extracted from an Email message.
- To: To or Recipient field extracted from an Email message.
- Cc: CC or Carbon Copy field extracted from an Email message.
- BCC: BCC or Blind Carbon Copy field extracted from an Email message.
- DateSent: Sent date of an Email message (mm/dd/yyyy format).
- TimeSent: Time of an Email message (hh:mm:ss format).
- DateReceived: Received date of an Email message (mm/dd/yyyy format).
- TimeReceived: Received time of an Email message (hh:mm:ss format).
- DateCreated: Creation. date of a file (mm/dd/yyyy format).
- TimeCreated: Creation time of a file (hh:mm:ss format).
- DateLastModified: Last modification date and time (mm/dd/yyyy format).
- TimeLastModified: Last modification time (hh:mm:ss format)
- File Extension: File extension of Document (.msg, .doc, .xis, etc.)
- Full Text: Relative file path to the full text/OCR File.
- Confidentiality: "Confidential" or "Highly Confidential," if a Document has been so designated under the Protective Order; otherwise, blank.
- Message-ID: The Outlook Message ID assigned by the Outlook mail server, if applicable.
- Foreign Language: Yes/No field for documents produced in a foreign language
- Hash Value
- Page count
- Production Volume

**6. De-Duplication:** Parties shall use reasonable efforts to de-duplicate stand-alone Documents or entire Document families globally using MDS or SHA-1 Hash value matching as outlined in Paragraph 3.2.

7. **System Files**. System files will be removed by using the industry files maintained in the National Software Reference Library by the National Institute of Standards and Technology. Other file types may be added to the list of excluded files by agreement of the parties.