IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CUSTOM HAIR DESIGNS BY SANDY, LLC, on behalf of themselves and all others similarly situated; and SKIP'S PRECISION WELDING, LLC, on behalf of themselves and all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>CENTRAL PAYMENT CO., LLC,<br><br>Defendant. | 8:17CV310<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on defendant Central Payment Co., LLC's (hereinafter CPAY) motion to dismiss Counts II and III, Filing No. 54, of plaintiffs' first amended complaint, Filing No. 46; defendant CPAY's motion to strike improper evidence submitted in opposition to the motion to dismiss, Filing No. 71; and the plaintiff's objection, Filing No.77, to the magistrate's order, Filing No. 76. Plaintiffs amended complaint alleges breach of contract; violation of the Racketeer Influenced and Corrupt Organizations Act, (hereinafter RICCO) 18 U.S.C. §§ 1962(a), (c) & (d)); and fraudulent overbilling and concealment.

**BACKGROUND**

Plaintiffs contend they are merchants that processed credit and debit transactions through CPAY. CPAY processes over 65,000 businesses and over $10 billion in credit sales annually. Plaintiffs contracted with CPAY from November 2015 through February 2017 for payment processing services. Plaintiffs allege that CPAY charged fees for its

payment processing services that do not coincide with the terms of plaintiffs' merchant agreements and Terms and Conditions. Plaintiffs plead this case as a putative nationwide class action and argue that CPAY is a multi-year, interstate, multi-million-dollar scheme to defraud unsophisticated merchants.[1] Defendants argue that this is a simple breach of contract case.

**STANDARD OF REVIEW**

*1. Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)*

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n.3. (2007); *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In deciding a motion to dismiss under Rule 12(b)(6), a court must accept the allegations contained in the complaint as true and draw reasonable inferences in favor of the nonmoving party. *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010).

---

[1] Plaintiffs also note that CPAY's fraud and overbilling is similar to an earlier scam conducted by CPAY's founders, the Hyman brothers (Matthew and Zachary Hyman), wherein the FTC permanently banned them from an entire industry.

Determining whether a complaint states a plausible claim for relief is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Courts follow a "two-pronged approach" to evaluate Rule 12(b)(6) challenges. *Iqbal*, 556 U.S. at 679. First, a court divides the allegations between factual and legal allegations; factual allegations should be accepted as true, but legal allegations should be disregarded. *Id.* Second, the factual allegations must be parsed for facial plausibility. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677. The Court should not "incorporate some general and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly*." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012). The question at this preliminary stage is not whether a plaintiff might be able to prove its claim, but whether it has "adequately asserted facts (as contrasted with naked legal conclusions) to support" those claims. *Id.* The court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly*, 550 U.S. at 558, 556. When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to set a claim under Fed. R. Civ. P. 12(b)(6). *Twombly*, 550 U.S. at 558; *Iqbal*, 556 U.S. at 679. Dismissal under Rule 12(b)(6) is appropriate only if it is clear that no relief can be granted under any set of facts that could be proven consistent with the allegations. *O'Neal v. State Farm Fire & Cas. Co.*, 630 F.3d 1075, 1077 (8th Cir. 2011).

## 2. RICO and Fed. R. Civ. P. 9(b)

In addition, RICO and fraud claims must be pled with particularity pursuant to Rule 9(b). *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (citing *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009)); *Allison v. Sec. Benefit Life Ins. Co.*, 980 F.2d 1213, 1216 (8th Cir. 1992) (explaining Rule 9(b) applies to the "critical elements of fraud"). Under this heightened pleading standard, the "circumstances" of the fraud that must be pled with particularity include "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentations and what was obtained or given up thereby." *H & Q Props., Inc. v. Doll*, 793 F.3d 853, 856 (8th Cir. 2015) (quoting *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995)). In other words, Rule 9(b) requires plaintiffs to plead "the who, what, when, where, and how" of the fraud. *Crest Constr. II, Inc.*, 660 F.3d at 353 (quoting *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011)).

**DISCUSSION**

### A. Motion to dismiss Counts II and III, Filing No. 54

Defendant moves to dismiss Counts II and III of plaintiffs' first amended complaint. Counts II asserts claims in violation of (RICO), 18 U.S.C. § 1962, and Claim III asserts fraudulent concealment.

RICO was passed to provide criminal and civil protections against organized crime. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232-233 (1989); *see* 18 U.S.C. § 1964(c). RICO "does not cover all instances of wrongdoing" or "ordinary commercial fraud." *See Crest Constr. II, Inc.*, 660 F.3d at 353 (citation omitted); *Terry A. Lambert Plumbing, Inc.*

4

*v. W. Sec. Bank*, 934 F.2d at 981–82; *see also Stonebridge Collection, Inc.*, 791 F.3d at 822. "Acts and omissions such as a breach of contract . . . are insufficient to establish RICO liability." *Estate of Joyce Rosamond Petersen v. Boland*, No. 8:16CV183, 2016 WL 6102339, at *6 (D. Neb. Oct. 19, 2016) (citing *Manion v. Freund*, 967 F.2d 1183, 1186 (8th Cir. 1992); *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir. 1990); *see Wheatley v. Kirkland*, No. 8:16CV148, 2016 WL 3661215, at *5 (D. Neb. July 5, 2016) (citing and concluding the same). RICO prohibits activities that are connected to a criminal enterprise via interstate commerce. 18 U.S.C. § 1962. RICO prohibits receiving "any income derived . . . from a pattern of racketeering activity" or "us[ing] or invest[ing] . . . any part of such income . . . in acquisition," establishment, or operation of "any enterprise" engaged in interstate commerce. 18 U.S.C. § 1962(a). RICO makes it illegal for "any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). In addition, a person cannot conspire to do either of these actions. 18 U.S.C. § 1962(d). Plaintiffs, argues defendant, did not allege an enterprise or the predicate acts engaged in a pattern of racketeering activity, where in plaintiffs suffered from a predicate act.

Defendants argue that to establish an enterprise plaintiffs must plead "(1) a common purpose that animates the individuals associated with it; (2) an ongoing organization with members who function as a continuing unit; and (3) an ascertainable structure distinct from the conduct of a pattern of racketeering." *United States v. Lee*, 374 F.3d 637, 647 (2004); *see Asa-Brandt, Inc. v. ADM Investor Servs., Inc.*, 344 F.3d 738, 752 (8th Cir. 2003) ("The enterprise is not the pattern of racketeering activity"). Further,

5

"[P]laintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation because a corporation necessarily acts through its agents and employees." *Allen v. First Unum Life Insur. Co.*, 2019 WL 1359480 (M.D. Fla. 2019); *Bachman v. Bear, Stearns & Co., Inc.*, 178 F.3d 930, 932 (7th Cir. 1999) (concluding a "firm and its employees, or a parent and its subsidiaries, are not an enterprise separate from the firm itself"). ("[Courts] must carefully distinguish between [a business] conducting its own affairs" and participating in a RICO enterprise. *Dahlgren v. First Nat. Bank of Holdredge*, 533 F.3d 681, 690 (8th Cir. 2008)).

Defendant also contends that this is not the subject matter encompassed under RICO. *See, e.g., Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 822 (8th Cir. 2015); *Craig Outdoor Advert. Inc. v. Viscom Outdoor, Inc.*, 528 F.3d 1001, 1029 (8th Cir. 2008); *Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank*, 934 F.2d 976, 981–82 (8th Cir. 1991); *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir. 1990). The Eighth Circuit has rejected "attempts to convert ordinary civil disputes into RICO cases." *Craig Outdoor*, 528 F.3d at 1029.

Defendant further argues that plaintiffs fail to adequately plead the existence of an "enterprise" as only CPAY and its affiliates and employees or agents operate the business. The "scheme to defraud", predicate acts" and "mail or wire fraud" allegations are only generically pleaded by the plaintiffs defendant argues. *See, e.g., Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000) ("[W]e are cautious about basing a RICO claim on predicate acts of mail and wire fraud . . . . This caution is designed to preserve a distinction between ordinary or garden-variety fraud claims better

6

prosecuted under state law and cases involving a more serious scope of activity." (citations omitted)); *McEvoy Travel Bureau*, 904 F.2d at 791 ("[N]ot every use of the mails or wires in furtherance of an unlawful scheme to deprive another of property constitutes mail or wire fraud").

Plaintiff opposes the motion to dismiss. First, plaintiff asserts that "proof that a RICO defendant has been involved in multiple criminal schemes [is] highly relevant to the inquiry into the continuity of the defendant's racketeering activity." *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 993–96 (8th Cir. 1989) (citation omitted). In this case, argues plaintiffs, the Hyman brothers are fraudsters and have been banned by the FTC for deceptive misconduct. Plaintiffs argue that they have plead the who want when and where as required under Fed. R. Civ. P. 9(b). Plaintiffs argue that the enterprise is cognizable and distinct.

Plaintiff alleges an association-in-fact enterprise. These entities include: independent sales agents; TSYS (processes transactions); central payment; and the Hyman Brothers. Enterprise includes: "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The *Boyle* decision by the Supreme Court, which changed the enterprise law, states: "[a]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946-49 (2009). When applying *Boyle*, contends plaintiffs, the common purpose in this case was to defraud merchants by overcharging and then splitting up he fees among the members of the

enterprise; the parties shared a purpose, namely CPAY paid the independent agents an inflated share of the money; and these relationships are long-term. Each group, argues plaintiffs, is legally distinct.

Defendant also argues that plaintiff failed to adequately allege mail fraud. However, the Eighth Circuit has stated:

> The crime of mail fraud is broad in scope and its fraudulent aspect is measured by a non-technical standard, condemning conduct which fails to conform to standards of moral uprightness, fundamental honesty, and fair play. A plaintiff may, but need not, allege that a defendant made misrepresentations of fact. Because misrepresentations of fact are not necessary to the offense, it follows that no misrepresentations need be transmitted by mail or wire: even routine business communications in these media may suffice to make a scheme of false dealing into a federal offense.

*Abels*, 259 F.3d at 918-19. Plaintiff alleges that the wiring of the money out of customer accounts and the issuance of fraudulent billings statements by U.S. Mail and email are sufficient to support this requirement. First Amended Complaint, Filing No. 46 at ¶¶ 26-134.

Plaintiffs contend that CPAY gave kick-backs to agents that hiked charges and shared in the profits of hidden fees; CPAY acted as a loan shark to sales representatives to the tune of tens of thousands of dollars, and then froze the agent's account until multiple new accounts were produced; merchants were locked-in to a contract based on fraudulent representations. Some examples include, tiered processing fees six months into a contract; CPAY raised miscellaneous fees such as annual fees, designating some of these as "passthrough fees." Defendants also allegedly debited improper amounts from merchant bank accounts and took early termination fees.

The Court will deny the motion to dismiss and allow discovery to continue. The Court has carefully reviewed the amended complaint. The plaintiff has sufficiently pled an enterprise with multiple, independent players who benefit from the alleged scheme. Further, plaintiff has clearly pled a pattern of racketeering and a common purpose. The common purpose is to defraud the merchants they service. Upon reviewing the complaint, the Court believes the plaintiffs have sufficiently alleged more than mere breach of contract and more than your normal civil fraud case. The plaintiffs allege nation-wide planning with fraudulent concealment over a number of years. This is sufficient under *Boyle*. With regard to the mail or wire fraud argument, the Court finds it is without merit at this point in the case. Plaintiffs have clearly alleged that sufficient mailings, emails, wire transfers so as to meet this requirement at the motion to dismiss stage. There were also allegedly unlawful withdrawals from the bank accounts of certain of the merchants. These facts are more than sufficient to meet the pleading stage requirements, with particularity. The Court will deny the motion to dismiss Count II.

      B.   <u>Fraudulent Concealment</u>

In order to state a claim for fraudulent concealment in Nebraska, plaintiff must allege: a duty to disclose a material fact; knowledge of the fact; concealment of the fact; that the fact was not within the plaintiff's reasonable attention, observation and judgment; that defendant concealed the fact intending that plaintiffs act or refrain from acting; and that plaintiffs reasonable relied on those facts; and that plaintiffs were damaged by the action or inaction of the concealment. *Knights of Columbus Council 3152 v. KFS BD, Inc.*, 791 N.W.2d 317, 334 (Neb. 2010).

With regard to the fraudulent concealment claim, defendant argues that plaintiffs have failed to identify any material fact that was concealed by CPAY nor do they contend that plaintiffs failed to allege they reasonably relied on such facts. Defendant argues that plaintiffs fail to identify any specific misrepresentations or undisclosed material facts. The allegations, argues defendant, go to the breach of contract claims. Plaintiff contends that "CPAY concealed its true intentions from merchants" and "deceived them into the contractual relationship by failing to disclose the truth about the relationship and CPAY's business model of systematically overcharging merchants and inflating service fees to fraudulently pad its profits." Filing No. 46, Amended Complaint, ¶ 272.

Plaintiff contends that CPAY's deception goes far beyond a breach of contract claim. Plaintiffs as set forth numerous material facts which include:

- CPAY's Merchant Application did not mention that disclosed fees would increase, or that new, undisclosed fees would be charged.
- CPAY had a systematic plan to increase fees as soon as merchants signed contracts and a routine practice of raising and adding fees beyond what was quoted in the agreement.
- CPAY's charges were not lower than CPAY's competitors.
- CPAY used uniform sales scripts to train its local representatives to deceive merchants.
- CPAY told agents not to disclose fees in a "welcome kit" sent to merchants.
- CPAY incentivized agents to lock-in merchants and try to charge them as much as possible, then split merchant overcharges with agents.
- CPAY took active steps to conceal overcharges from merchants.
- CPAY would not issue transparent billing statements and hid additional fees within the bills to prevent merchants from discovering what they were being charged.
- CPAY issued generalized billing statements to merchants, in lieu of detailed itemizations (aka "full disclosure statements") to hide overcharges.
- CPAY was controlled and operated by twin brothers who were banned from an industry for deceptive practices and improper debiting of customer accounts.

10

Plaintiffs' brief, Filing No. 59 at 24-25.

Again, for the reasons previously stated herein regarding plaintiffs' pleading, as well as the examples of alleged fraudulent activities cited herein by the plaintiff, the Court will deny the motion to dismiss Count III. As stated, plaintiffs have alleged that material facts were hidden and not disclosed; plaintiffs had no other way of knowing about the fraud; the plaintiffs relied on the representations; and the plaintiffs are clearly harmed. The motion to dismiss is denied.

### C. Motion to Strike, Filing No. 71

Defendant moves to strike evidence submitted in opposition to the motion to dismiss. In particular, defendant moves to strike the deposition transcript from an unrelated proceeding that plaintiffs submitted in their sur-reply brief, Filing No. 70, that discusses how CPAY conducts its business through independent contractors, rather than through employees. The Court is not considering the deposition transcript at this point in the case. This is a motion to dismiss, not one for summary judgment. This transcript may be relevant at a later time, but it will not be considered for purposes of the motion to dismiss. The Court will grant the motion to strike.

### D. Plaintiff's objection, Filing No. 77, to the magistrate judge's order, Filing No. 76

"A magistrate judge's authority over nondispositive pretrial matters is governed by 28 U.S.C. § 636(b)(1)(A)." *Klein v. TD Ameritrade Holding Corp.,* No. 8:14CV396, 2017 WL 1316944, at *1–2 (D. Neb. Apr. 7, 2017)(citing Fed. R. Civ. P. 72(a) and *Gomez v. United States*, 490 U.S. 858, 873-74 (1989). "On review of a decision of the magistrate judge on a nondispositive matter, the district court may set aside any part of the magistrate judge's order that it finds is clearly erroneous or contrary to law." *Id.* (citing 28

11

U.S.C. § 636 (b)(1)(A); Fed. R. Civ. P. 72(a); and *Ferguson v. United States,* 484 F.3d 1068, 1076 (8th Cir. 2007). ("A district court may reconsider a magistrate judge's ruling on nondispositive pretrial matters where it has been shown that the ruling is clearly erroneous or contrary to law")).

Plaintiffs moved to collect defendant's 2005-2012 fee data for its merchant accounts.[2] Plaintiffs need this data, they argue, to assist with the elements for their Rule 23 class certification. The magistrate judge denied the request. Plaintiffs object.

The magistrate judge, argues plaintiffs, is mistaken in her order, as she believes the case does not involve a claim for violations of RICO or fraudulent concealment.[3] Plaintiffs also disagree with the defendant's argument regarding the running of the statute of limitations. Plaintiffs argue that the date of discovery is 2018 and discovery of fraudulent conduct is a prerequisite to the accrual of claims based in fraud. Neb. Rev. Stat. § 25-207(4) (In an action for fraud, "the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud…"). Plaintiffs contend the magistrate's order provides incomplete data sets and data sets that are insufficient to establish an overcharge, as the prior year is not there for comparison.

Plaintiff argues that data from 2005-2012 will show a pattern by CPAY of continual breaching of contracts with merchants. Further, plaintiffs believe this data can be simply extracted, as it is housed in one database and can be easily distributed to plaintiffs. Plaintiffs assert that this discovery will show how the business scheme was created and

---

[2] The similar information from 2012 to 2017 has been provided to the plaintiffs.

[3] However, the motion to dismiss had been pending on those exact issues and had not been decided at the time the magistrate judge issued her order.

how it was integrated into CPAY's business model, and it will establish that the fraud was concealed from CPAY's customers pre-2012. As such, the conduct will not be barred by the statute of limitations. Plaintiff believes that this will demonstrate fraudulent conduct across the merchant class. All of these reasons, contend plaintiffs, will bear on class certification.

Defendant argues that the plaintiffs have set forth a much shorter class period in their Complaint. They also contend that plaintiffs failed to explain why the 7 years of data they currently have is insufficient. Next, defendant contends that the current class did not contract with CPAY until late 2015. Defendant also argues that the statute of limitations would preclude any claims from 2005-2012. In this same regard, CPAY contends that certain circumstances justified additional fees and increases.

With regard to the magistrate judge's first finding, this Court has now concluded that plaintiffs have stated a claim for both RICO and fraud at this point in the case. The Court finds the requested information is relevant to the alleged start of the fraudulent concealment, as it goes to how the alleged scheme was initiated and became part of the pattern of doing business. Further, the data may be relevant to who is eligible for membership in the class as well. In addition, the information might be indicative of whether there exists a statute of limitations problem or not. Further, it does not appear that disclosure of the requested documents will be an extreme hardship on the defendant. For these reasons, the court will require the defendant to provide this information to the plaintiffs within 90 days of this Memorandum and Order. Likewise, the Court will not affirm this magistrate judge on this issue.

THEREFORE, IT IS ORDERED THAT:

1. Defendants' motion to dismiss, Filing No. 54, is denied;

2. Defendant's motion to strike, Filing No. 71, is granted;

3. Plaintiff's objection to the magistrate's order, Filing No. 77, is granted;

4. The report and recommendation of the magistrate judge, Filing No. 76, is overruled.

Dated this 25th day of July, 2019.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge