## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

|  |  |  |
|---|---|---|
| CUSTOM HAIR DESIGNS BY SANDY, LLC, and SKIP'S PRECISION WELDING, LLC, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 8:17-cv-00310-JFB-CPZ |
| CENTRAL PAYMENT CO., LLC, | ) ) | |
| Defendant. | ) ) | |

## BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
## FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

Tyler W. Hudson
Eric D. Barton
Melody R. Dickson
WAGSTAFF & CARTMELL, LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100
thudson@wcllp.com
ebarton@wcllp.com
mdickson@wcllp.com

E. Adam Webb
Matthew C. Klase
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, S.E., Suite 480
Atlanta, GA 30339
(770) 444-0773
Adam@WebbLLC.com
Matt@WebbLLC.com

*Counsel for Plaintiffs and the Class*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND .............................................................................................. 3

I.     Initial Investigation, Early Litigation, and Discovery. ....................................... 3

II.    The Class Certification Appeal and Merits Discovery. ..................................... 6

III.   Class Notice, Further Dispositive Motion Practice, and Trial Preparation....................... 9

IV.    Mediation and Settlement on the Eve of a Jury Trial. .................................... 11

ARGUMENT .................................................................................................. 13

I.     The Requested Fee Is Reasonable.............................................................. 14

       A.     The "Percentage of the Benefit" Method Should Be Used................................. 15

       B.     One-Third Is a Reasonable Fee Percentage. ....................................... 18

II.    The Expense Request Is Appropriate.......................................................... 29

III.   Service Awards Are Warranted for the Class Representatives....................................... 29

CONCLUSION................................................................................................. 30

## **INTRODUCTION**

The Settlement Agreement with Central Payment Co., LLC ("CPAY"), if approved, makes available ***$84 million in cash benefits*** to the merchant Class. This Settlement is believed to be largest class settlement ever achieved in a case seeking redress for alleged payment processor overbilling. Pursuant to the Settlement Agreement and this Court's inherent authority under the common fund doctrine and Rule 23(h), Plaintiffs and Class Counsel Wagstaff & Cartmell and Webb Klase & Lemond respectfully submit this Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards to Class Representatives.

Class Counsel request that the Court approve a fee equal to one-third of the $84 million Settlement benefit made available to the Class, and reimbursement of $1,209,102.88 in out-of-pocket expenses paid on behalf of the Class. The fee and expense requests are readily justified under the circumstances of this case and through application of the *Johnson* factors. Such fee is further supported by declarations from experienced mediator Hunter Hughes, respected Eighth Circuit trial and class action attorneys David Domina and Dan Gustafson, and Class Counsel themselves. The result achieved here was not obtained easily, but rather only as a result of more than four-and-a-half years of constant effort by Class Counsel that involved certifying a nationwide class, prevailing on an appeal at the Eighth Circuit, fending off a petition for writ of certiorari to the United States Supreme Court, defeating numerous dispositive motions, and preparing the case for trial.

As detailed more fully herein, the factual and legal complexity of the claims required Class Counsel to invest extensive labor and advance significant costs. The work performed prosecuting the claims of Class members – on a fully contingent basis – involved significant risk, and Counsel performed that work by forgoing other prospects and committing themselves to this

case nearly full-time for much of the past half decade. Only because of those efforts were Class Counsel able to: review and analyze hundreds of thousands of pages of documents; draft and file a substantial amended complaint raising fraudulent concealment and RICO claims that greatly expanded the scope of the case and the relief available to the Class; draft and file substantial briefs in this Court, the Eighth Circuit, and the United States Supreme Court supporting class certification; retain and work with highly qualified experts; and respond to numerous substantive motions dealing with complex and sophisticated legal arguments — many without controlling precedent — on issues such as Nebraska's state-law duty to disclose, the prevention doctrine, contractual conditions precedent, RICO enterprise, mail and wire fraud, but-for and proximate causation, arbitration agreements, waiver, and procedural and substantive unconscionability.

Class Counsel performed this work battling against CPAY's top-notch and well-funded national and local defense counsel, who were armed with an extensive factual record; industry knowledge; and credible arguments that Plaintiffs failed to satisfy certain conditions precedent and agreed to arbitration, that the trial evidence would not support class certification, that CPAY did not defraud any customers, that CPAY acted consistent with industry practices and with the contract terms, and that Class damages were substantially less than alleged by Plaintiffs' experts. Given these risks, the result achieved through Class Counsel's investment and persistence speaks for itself, justifying the fee and expense request made herein.

The Court should also approve service awards of $15,000 for each of the two Plaintiffs/Class Representatives. The Settlement could not have occurred but for these brave merchants' temerity in standing up to CPAY and their willingness to devote their time and scant resources to this litigation.

2

## BACKGROUND

The full background of this litigation is described thoroughly in Class Counsel's previously-filed joint declaration (Dkt. 328-1), as well as the motion for final approval of the Class Settlement and Class Counsel's supplemental joint declaration ("Supp. Joint Decl."), filed simultaneously herewith. Class Counsel's relentless pursuit of claims on behalf of the Class is highlighted herein.[1]

## I.    Initial Investigation, Early Litigation, and Discovery.

Webb, Klase & Lemond's ("WK&L") involvement in this case commenced approximately five years ago when they began investigating potential overbilling claims against CPAY with the Plaintiffs/Class Representatives. *See* Joint Declaration of Tyler W. Hudson and Matthew C. Klase ("Joint Decl.") ¶ 13 (Dkt. 328-1). These former CPAY customers sought WK&L's assistance because they had successfully prosecuted similar claims against CPAY competitor Mercury Payment Systems. *Id.*

WK&L interviewed the Plaintiffs' principals and scrutinized their contracts and statements, noticing several discrepancies and seemingly false or misleading explanations for such discrepancies. *Id.* at ¶ 14. After online research revealed other CPAY customers had often complained of similar instances of overbilling, a draft class action complaint asserting breach of contract and breach of the duty of good faith and fair dealing was prepared. *Id.* at ¶¶ 15-17.

Given their case load at the time, WK&L believed it would behoove Plaintiffs and the putative class to retain experienced, well-respected co-counsel to assist in the prosecution of the case. *Id.* at ¶ 18. WK&L's first choice was Wagstaff & Cartmell ("W&C"), given partner Ty Hudson's excellent reputation for class action work and the firm's manpower, resources, and

---

[1] CPAY does not oppose the relief requested in this motion. The arguments and contentions contained herein, however, are attributable solely to Plaintiffs.

location. *Id.* at ¶ 19.  After thoroughly researching the case, W&C agreed to act as lead counsel, with WK&L assisting in all aspects of the litigation. *Id.* at ¶ 20.

The initial putative class action complaint was filed on August 21, 2017.  Dkt. 1.  After CPAY answered – denying all claims and asserting a bevy of factual and legal defenses – Class Counsel drafted and served 60 targeted document requests that were designed to capture internal CPAY evidence concerning the design and imposition of the challenged fees.  Joint Decl., ¶¶ 24-26.  CPAY resisted providing discovery and Class Counsel was forced to pursue it by drafting Golden Rule letters, initiating meet and confer sessions, going to Magistrate Judge Zwart to resolve multiple discovery disputes, and appealing such rulings to this Court when necessary. *Id.* at ¶¶ 27-28, 49-52.  Class Counsel also worked with the Plaintiffs to respond to CPAY's extensive written requests. *Id.* at ¶ 29.  In the meantime, Class Counsel managed the schedule set by the Court, obtaining extensions when needed to ensure a thorough and complete investigation. *Id.* at ¶ 31.

These discovery efforts resulted in the production of approximately 34,000 pages of internal CPAY documents, all of which Counsel analyzed and coded. *Id.* at ¶¶ 30, 32-33.  Although this effort was a massive task and took many hundreds of hours, it was critical to positioning Class Counsel to not only understand the nature of CPAY's fee practices but ensure that all proper class claims were being alleged. *Id.* at ¶ 33.

This investigation (and Counsel's extensive legal research) revealed grounds for fraud-based claims. *Id.* at ¶ 34.  On November 15, 2018, Class Counsel prepared and filed a 70-page First Amended Complaint adding two new claims against CPAY for violations of civil RICO and fraudulent concealment.  Dkt. 46.

Class Counsel also realized they would need to engage sophisticated experts to help Plaintiffs prove the Rule 23 certification requirements, as well as to position their claims for success at trial.  Joint Decl., ¶ 36.  At great expense, Class Counsel retained Arthur Olsen, a data processing expert to assist in organizing and understanding CPAY's fee and transaction data, isolating the various charges at issue, and performing damage calculations for the putative class, and Dr. Karl Borden, an industry expert to address liability and causation issues.  *Id.* at ¶¶ 37-40.

CPAY thereafter moved to dismiss the newly added RICO and fraudulent concealment claims and Class Counsel prepared a lengthy response brief, eventually obtaining an order denying the motion.  *Id.* at ¶¶ 43-47; Dkt. 87.

After CPAY answered the First Amended Complaint, Class Counsel's discovery efforts continued in full force.  Joint Decl., ¶¶ 48-49.  Negotiations amongst counsel and rulings from the Court resulted in 10 additional document productions from CPAY, spanning an additional 1,400 pages.  *Id.* at ¶ 53.  Dkt. 87.

With a fuller set of CPAY's billing records, fee data, and internal communications, Class Counsel spent substantial time performing a detailed analysis of the fees charged by CPAY over more than a decade.  *Id.* at ¶ 54.  Working with data expert Arthur Olsen, Class Counsel examined hundreds of class member files containing millions of records, drafted and ran various data scripts, and conducted cell-by-cell analysis to decipher CPAY's systematic billing and fee/rate increase practices, ultimately discovering more than 70 widespread discount rate increases, the practice that would become known as "tier shifting," and numerous false, misleading, or incomplete disclosures made by CPAY concerning the challenged fees.  *Id.* at ¶¶ 55-58.  Class Counsel also evaluated the various forms of merchant contracts used by CPAY during the class period and discovered they were materially similar.  *Id.* at ¶ 59.

Class Counsel took the deposition of CPAY's corporate representative Tommy Chang on March 12, 2019, obtaining several admissions that would become key evidence. *Id.* at ¶ 60. Class Counsel also prepared the Plaintiffs for deposition and defended them from CPAY's probing inquiries. *Id.* at ¶ 61.

Class Counsel next worked with their experts, Mr. Olsen and Dr. Borden, to prepare and timely submit extensive expert reports. *Id.* at ¶¶ 62-63. Counsel then prepared their experts for deposition and defended them. *Id.* at ¶ 64. Counsel next reviewed the report of CPAY expert Ian Ratner and took a full-day deposition of him, obtaining multiple key admissions. *Id.* at ¶¶ 65-66. This voluminous, time consuming discovery was absolutely essential to enabling Class Counsel to define and seek certification of the appropriate class and evaluate the merits of the case for trial and settlement purposes. *Id.* at ¶ 67.

On July 30, 2019, after digesting nearly two years of voluminous discovery and conducting extensive legal research, Class Counsel prepared and filed a 60-page brief in support of the motion to certify the Class. *Id.* at ¶ 68; Dkt. 90. CPAY fervently opposed certification with a 72-page brief of its own, to which Class Counsel prepared a 64-page brief in reply. Joint Decl., ¶¶ 70, 73. Class Counsel was also forced to defend CPAY's lengthy motions to strike Dr. Borden's opinions and a motion for summary judgment on Plaintiffs' individual claims, which they did with vigor and dedication. *Id.* at ¶¶ 71-72, 74-75, 74; Dkts. 113, 134.

Class Counsel's efforts in this regard paid great dividends for the Class. On February 11, 2020, the Court certified the Class, denied summary judgment to CPAY, and denied the motion to strike Dr. Borden's opinions. Dkt. 142.

## II.     The Class Certification Appeal and Merits Discovery.

CPAY continued its tenacious defense by seeking permission to appeal the Court's class certification ruling. Joint Decl., ¶ 78. Although Class Counsel opposed this petition (and

successfully moved to strike a reply brief submitted by CPAY), the Eighth Circuit granted the petition and authorized CPAY to file its appeal. *Id.* at ¶ 79.

Meanwhile, Class Counsel continued to pursue discovery in this Court, preparing 44 additional document requests to ensure they obtained the evidence needed for the Class to prevail on the merits at trial and requesting multiple depositions, including those of CPAY co-founders Matthew and Zach Hyman. *Id.* at ¶¶ 80-81. CPAY opposed this discovery and moved to stay all proceedings in this Court pending a decision on the class certification appeal. *Id.* at ¶ 86. Class Counsel dutifully opposed this motion on behalf of the Class, but it was granted by the Court. *Id.* at ¶¶ 87-88; Dkt. 169.

Prevailing on the appeal was obviously essential to the Class obtaining any relief in this case. Because Class Counsel are trial litigators by trade, they retained experienced appellate litigation firm Gupta Wessler PLLC to assist with drafting the Class's appellate brief and preparing for oral argument. Joint Decl., ¶ 90. The Class's 52-page brief went through multiple rounds of edits before it was filed, with no less than eight attorneys providing input. *Id.* at ¶¶ 91-92. Class Counsel's preparation for oral argument was likewise extensive, with the entire team anticipating potential questions from the panel and conducing mock arguments. *Id.* at ¶ 96. On December 30, 2020, these efforts were rewarded when the Eighth Circuit issued its opinion unanimously affirming this Court's certification of the Class in all respects. *Id.* at ¶ 97.

After the stay was lifted in this Court, Class Counsel refocused their labor on obtaining necessary merits discovery. *Id.* at ¶ 99. Over the next several months, 20 additional document productions were delivered by CPAY totaling over 400,000 pages, with Class Counsel carefully reviewing, coding, and cataloguing this vast evidence to prepare for depositions and trial. *Id.*

Class Counsel also pursued third-party discovery from CPAY's member bank, First National Bank of Omaha, as well as CPAY's processor and business partners, Total System Services, Inc., and TSYS Merchant Solutions, LLC, which resulted in 7,000 additional pages of evidence to support the Class's claims. *Id.* at ¶¶ 100-02.

Class Counsel also noticed and took an additional eight fact witness depositions of knowledgeable employees of CPAY, TSYS, and FNBO. *Id.* at ¶¶ 117-24. Given the fact that more than 450,000 pages of internal documents had been produced, preparation for these depositions was difficult and burdensome. *Id.* at ¶ 117. Most of these depositions took the full time allotted by the Federal Rules of Civil Procedure. *Id.* at ¶¶ 117-124.

Throughout the course of merits discovery, Class Counsel also collaborated with their retained expert witnesses on what had been learned so as to ensure they were aware of all relevant information in forming their opinions. *Id.* at ¶ 125.

Class Counsel eventually determined the Class would benefit from another expert witness – certified fraud examiner Steve Browne. *Id.* at ¶ 126. Counsel worked collaboratively with Mr. Browne and Mr. Olsen to prepare their trial expert reports, which were detailed and voluminous. *Id.* at ¶¶ 127-28. This was a time-intensive process that, given the deadlines set by the Court, required the undivided attention of Class Counsel's entire team. *Id.* at ¶ 137.

Counsel also digested the lengthy reports submitted by CPAY experts Ian Ratner and Patrick Moran. *Id.* at ¶¶ 129-32. After doing so, Class Counsel worked with Mr. Olsen and Mr. Browne to prepare rebuttal reports, and retained a new expert – payment processing industry veteran Steve Beene – to rebut Mr. Moran's conclusions. *Id.* at ¶¶ 134-36. Merits expert depositions were also taken. Class Counsel took all-day depositions of Mr. Ratner and Mr. Moran. *Id.* at ¶¶ 133. Counsel also defended lengthy depositions of Mr. Olsen and Mr. Browne

twice (after their opening reports and again after their rebuttal reports) and Mr. Beene once. *Id.* at ¶¶ 130, 138. All of these expert depositions were time-intensive. *Id.* at ¶ 139. For instance, it took many hours of preparation to confirm the Class experts had mastered the voluminous record evidence and were ready to withstand CPAY's counsel's challenges to their reports, their opinions, and their methodologies. *Id.*

The expense associated with these experts was significant. Supp. Joint Decl., ¶ 23. However, because Class Counsel believed the experts' testimony were integral components of the Class's chances of success, Counsel agreed to pay such costs without guarantee they would ever be reimbursed. *Id.* at ¶ 24.

### III.    **Class Notice, Further Dispositive Motion Practice, and Trial Preparation.**

While discovery was ongoing, Class Counsel worked with their expert Arthur Olsen to isolate the members of the Class in the billing data and obtain needed contact information from CPAY so class notice could be provided in accordance with Rule 23. Joint Decl., ¶¶ 110-11. At great expense, Class Counsel also retained Epiq Systems, Inc. ("Epiq") to administer the class notice plan. *Id.* Class notice was thereafter provided in accordance with the plan approved by the Court. *Id.* at ¶¶ 113-15; Dkts. 219, 268.

Class Counsel also diligently opposed – ***and secured defeat of*** – CPAY's seemingly never-ending barrage of petitions and motions, each of which was intended to undermine the Class's ability to obtain meaningful relief at the January 31, 2022 trial. *E.g.*, Joint Decl., ¶¶ 104, 107-09, 153 (motion to send portion of the Class to arbitration), 116 (petition for writ of certiorari to review class certification decisions of this Court and the Eighth Circuit), 142, 144, 146, 157 (motion to exclude testimony of Steve Browne), 142, 144, 147, 157 (motion to decertify the Class), 142, 144-45, 157 (motion for partial summary judgment), 156, 158-59 (motion to stay trial pending resolution of arbitration appeal), 151-52, 157 (motion to continue

trial date). The time and attention required by such motions, many of which had to be briefed while Class Counsel was in the middle of preparing for trial, was substantial.

To assist the Class's chances of prevailing on the merits, Class Counsel also researched and filed two dispositive motions of their own – a motion for partial summary judgment asking the Court to find in the Class's favor on all elements of the express breach of contract claim other than damages and a motion to exclude certain limited testimony from CPAY experts Mr. Ratner and Mr. Moran. *Id.* at ¶ 143. Although these motions were ultimately denied by the Court (with the possibility of reconsideration during trial), they further reveal the dogged effort expended by Class Counsel to achieve victory for the Class.

By December of 2021, Class Counsel's preparation for trial was in full swing. *Id.* at ¶ 160. While awaiting the Court's rulings on the pending motions, their team was busy formulating witness and exhibits lists, working with Plaintiffs and their experts on their direct examinations, and formulating strategy for examining CPAY's witnesses. *Id.* at ¶ 160. Because they did not know which of CPAY's witnesses (all former employees beyond the subpoena power of the Court) would be present for trial, they were forced to prepare for the possibility that their testimony would be admitted via deposition and focused on reviewing and re-reviewing their transcripts to select the appropriate testimony. *Id.* at ¶ 161.

Class Counsel timely prepared and served the Class's final witness and exhibit lists, deposition designations, objections to CPAY's witness and exhibit lists and deposition designations, and rebuttal designations. *Id.* at ¶¶ 162-64, 170. They also issued trial deposition subpoenas to two former CPAY employees who were not deposed during the discovery period pursuant to a stipulation previously reached by the parties. *Id.* at ¶ 166. CPAY resisted this discovery, resulting in argument before Magistrate Judge Zwart, briefing, and a written order

authorizing the depositions (with restrictions). *Id.* at ¶¶ 166-67.

Class Counsel also prepared Plaintiffs' omnibus motions in limine, briefing 19 categories of evidence that they contended should be excluded at trial. *Id.* at ¶ 168. This brief was the culmination of years of cataloging trial evidence and the result of careful deliberation. *Id.*

Class Counsel also worked collaboratively with CPAY's counsel to draft and submit a proposed pretrial order to the Court (*id.* at ¶ 171) and prepared a lengthy opposition brief to CPAY's omnibus motions in limine (*id.* at ¶ 173).

In further preparation for trial (and at great expense), Class Counsel engaged Sound Jury Consulting to help identify the best trial evidence and evaluate how best to present the case. *Id.* at ¶ 173. This included an in-depth exploration of potential jurors' reactions to the Class arguments, evaluation of the jury's understanding of the complexities of the card processing industry, as well as the preparation of necessary demonstrative aids and exhibits. This work was extensive and time-consuming and ultimately very helpful to positioning Class Counsel to better evaluate the case for trial and settlement purposes. *Id.*

Because they had never tried a case in this Court, Class Counsel also believed it would behoove the Class to retain a well-respected and experienced local trial attorney, David Domina, to assist with navigating local procedures and trying the case. *Id.* at ¶ 174.

To summarize, Class Counsel were willing to do (and spend) whatever it took to maximize the Class's chances of success.

## IV.    <u>Mediation and Settlement on the Eve of a Jury Trial.</u>

Shortly after the Class was certified, the parties agreed to mediate the case with experienced class action neutral Hunter Hughes of Atlanta, Georgia. *Id.* at ¶ 82. Class Counsel proposed Mr. Hughes because he has substantial experience successfully mediating class cases, including cases seeking reimbursement for alleged payment processor overbilling. *Id.*

In preparation for the April 9, 2020 mediation, Class Counsel prepared and produced a detailed powerpoint cataloguing the key evidence they had uncovered in discovery to date. *Id.* at ¶ 83. Despite non-collusive, good faith negotiations, the mediation was unsuccessful. Declaration of Hunter Hughes ("Hughes Decl.") ¶¶ 10-11 (filed herewith).

The parties did not seriously entertain settlement again until after the Court denied all dispositive motions. Joint Decl., ¶ 164; Hughes Decl., ¶ 12. A second mediation session was held on January 7, 2022. Hughes Decl., ¶ 13. Again, the parties engaged in arm's length negotiations but no settlement was reached. *Id.* at ¶ 14. While the parties were in agreement on the structure of a potential settlement, they remained too far apart on the amount of monetary relief to be provided to the Class, and an impasse was declared. *Id.* at ¶¶ 14-15.

Following the failure of the second mediation, Class Counsel believed that the case would be tried and its team continued with trial preparations in earnest. Joint Decl., ¶ 175. However, during the following week while counsel was in contact concerning their pre-trial deadlines and obligations, resolution talks resurfaced and the monetary gap that existed at the conclusion of the mediation began to close. *Id.* at ¶ 176. Over the weekend of January 15th-16th, Class Counsel continued to negotiate with CPAY's counsel and after substantial back-and-forth negotiations ultimately reached agreement on the key settlement terms on January 17, 2022 (the day before the pretrial conference). *Id.* at ¶ 177. These negotiations were entirely at arm's length and were fiercely contested, like every other aspect of this litigation. *Id.* at ¶ 178.

After a memorandum of understanding was executed and the Court was notified, Class Counsel and CPAY thereafter worked diligently to finalize the Settlement. Joint Decl., ¶¶ 179-85. Negotiation of the precise terms was adversarial and took several weeks. *Id.* Indeed, counsel exchanged multiple redlined drafts of (a) a detailed written agreement, (b) the notices to

be made available to the Class informing them of the Settlement, and (c) the claim form for former customers.  *Id.* at ¶¶ 180-83.  Importantly, discussions regarding attorneys' fees and expenses and service awards occurred only after all other material terms of the Settlement had been negotiated and agreed to by the parties.  *Id.* at ¶ 184; Hughes Decl., ¶ 17.  Consensus was reached on final drafts of the agreement, notices, and allocation formula on March 4, 2022.  Joint Decl., ¶ 185. Class Counsel thereafter prepared and filed a detailed motion for preliminary approval of the Settlement (Dkts. 326-28), which was promptly granted by the Court.  Dkt. 329.

Class Counsel have subsequently worked with CPAY and Epiq – the appointed settlement administrator – to ensure that the Class members were provided notice in accordance with the approved notice program.  Supp. Joint Decl., ¶ 5.  In doing so, Class Counsel (1) reviewed and edited the email, postcard, and long form notices, the claim form, and the content of the settlement website and telephone IVR scripts; (2) ensured notice was timely sent; (3) answered direct, individual inquiries from Class members via telephone and/or email; and (4) monitored those notices that could not be successfully delivered and the claims response.  *Id.* at ¶ 6.

Class Counsel have also prepared and filed a motion for final approval and will appear at the final approval hearing.  *Id.* at ¶ 7.  Even if the Settlement is approved, Class Counsel's work will continue well past the final approval hearing and not conclude until all Class member payments are negotiated and the Settlement is fully consummated.  *Id.* at ¶ 8.  This process will require many months of additional work.  *Id.*

## **ARGUMENT**

Under the Settlement, CPAY is obligated to establish a common fund of up to $84 million to cover Class member payments, the notice program, administration of the Settlement by a third-party expert, attorneys' fees and expenses, and service awards.  Settlement ¶¶ 39, 62-67.  All 185,884 Class members are eligible to receive a cash payment from the fund.  *See*

Declaration of Peter Sperry ("Sperry Decl.") ¶ 8 (filed herewith). The 27,164 Class members that are current customers will receive their payments *automatically*, while the 158,720 Class members that are former customers will receive their payments if they complete and return a simple claim form via mail or electronically via the settlement website. Settlement ¶¶ 68-69; Sperry Decl., ¶ 8. There is no requirement that former customers submit any documentation to substantiate their claims. No matter how many former customers choose to file claims, *in no event* will the amount paid from the common fund be less than $58.8 million. Settlement ¶¶ 64, 73.

As compensation for their successful efforts, Class Counsel respectfully request that the Court approve a fee of $28 million, which constitutes one-third of the $84 million cash Settlement benefits. Class Counsel also request reimbursement of their out-of-pocket litigation expenses in the amount of $1,209,102.88 and service awards of $15,000 for each Class Representative. All of this relief is reasonable and should be approved.

## I.     The Requested Fee Is Reasonable.

For decades, it has been established law that, when a representative party confers a substantial benefit upon a class, its counsel is entitled to fees based upon the benefit obtained. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. *Linquist v. Bowen*, 839 F.2d 1321, 1323 (8th Cir. 1988). The doctrine "'rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense.'" *Bublitz v. E.I. duPont de Nemours and Co.*, 224 F. Supp. 2d 1234, 1242 (S.D. Iowa 2002) (quoting *Van Gemert*, 444 U.S. at 478). Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons and deter future misconduct. *E.g.*, *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *also* Declaration of Daniel E. Gustafson ("Gustafson

Decl.") ¶ 40.    Adequate compensation promotes the availability of qualified counsel for

aggrieved persons:

> If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and
> effort when it is successful, then effective representation for plaintiffs in these
> cases will disappear . . . .  We as members of the judiciary must be ever watchful
> to avoid being isolated from the experience of those who are actively engaged in
> the practice of law.  It is difficult to evaluate the effort it takes to successfully and
> ethically prosecute a large plaintiffs' class action suit.  It is an experience in
> which few of us have participated.   The dimensions of the undertaking are
> awesome.

*Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1375-76 (D. Minn. 1985); *also* Declaration of

David A. Domina ("Domina Decl.") ¶ 51 (failure to provide adequate compensation "removes

from practice lawyers who are willing to take risks to enforce the law against large companies or

organizations that abuse the rules and grow at the expenses of dependent, defenseless people

with neither choice to refuse dealings with the abuser nor resources to battle the abuse alone").

### A.    The "Percentage of the Benefit" Method Should Be Used.

There are two methods to calculate reasonable class action attorneys' fees under the

common benefit doctrine – the "percentage of the benefit" method and the "lodestar" method.

*Rawa v. Montasanto Co.,* 934 F.3d 862, 870 (8th Cir. 2019); Gustafson Decl., ¶ 11.  Although

district courts in this Circuit have discretion to apply either method, "[t]he percentage-of-the-

benefit method is recommended in common-fund cases."  *Anderson v. Travelex Ins. Servs., Inc.*,

No. 8:18-cv-362, 2021 WL 4307093, *3 (D. Neb. Sept. 22, 2021) (citing *Johnston v. Comerica

Mortg. Corp.*, 83 F.3d 241, 245-46 (8th Cir. 1996)); *also, e.g.*, *In re Xcel Energy, Inc.*, 364 F.

Supp. 2d 980, 991 (D. Minn. 2005) ("In the Eighth Circuit, use of a percentage method of

awarding attorney fees in a common-fund case is not only approved, but also 'well established'")
(quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)).[2]

Courts trend toward the percentage method in common fund cases because it "directly
aligns the interests of the class and its counsel and provides a powerful incentive for the efficient
prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396
F.3d 96, 121 (2d Cir. 2005). The lodestar method, by contrast, "creates an unanticipated
disincentive to early settlements, tempts lawyers to run up their hours, and compels district
courts to engage in a gimlet-eyed review of line item fee audits." *Id.* As a result, this Court
should follow the Eighth Circuit's recommendation and apply the percentage of benefit method
when considering the appropriate fee award from the $84 million common benefit obtained by
Class Counsel. *In re Texas Prison Litig.*, 191 F.R.D. 164, 177 (W.D. Mo. 1999) ("Because this
is a common fund case, the percentage of benefit method should be applied").

In determining the appropriate percentage of the benefit to be awarded as fees, courts
look to the total amount made available to the class, even if all class members have not filed
claims to receive compensation allocated to them, because "[t]heir right to share the harvest of
the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund
created by the efforts of the class representatives and their counsel." *Van Gemert*, 444 U.S. at
480; *see also, e.g.*, *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 104 (2013) ("This Court has

---

[2] The Eighth Circuit's recommendation of awarding a percentage of the fund is the usual method
of determining attorneys' fees in common fund cases. *See* 4 Newberg on Class Actions §14:6
(4th ed. 2010) ("in recent years, a majority of the Circuit courts have approved the percentage-
of-the-fund method."). *See also* Manual for Complex Litigation, Fourth, § 14.121 ("[T]he vast
majority of courts . . . use the percentage-fee method in common fund cases."); Gustafson Decl.,
¶ 14. The Supreme Court has also held that "under the 'common fund doctrine,' . . . a reasonable
fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886,
900 n.16 (1984).

recognized consistently that someone who recovers a common fund for the benefit of persons other than himself is due a reasonable attorney's fee from the fund as whole") (internal quotation marks omitted); *Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ("even if 97 percent of the class did not exercise their right to share in the fund, their opportunity to do so was a benefit to them") (citing *Van Gemert*); *Barfield v. Sho-Me Power Elec. Co-op*, No. 2:11-cv-4321, 2015 WL 3460346, *4 (W.D. Mo. June 1, 2015) ("it is appropriate to base the percentage on the gross cash benefits available for class members to claim") (citing *Van Gemert*); *Knutson v. Sprint Communications Co., LP*, No. 4:11-cv-04041, 2013 WL 2490644, *2 (D.S.D. June 10, 2013) (same) (citing *Van Gemert*); Gustafson Decl., ¶ 16.

Courts take this approach because "the entire [f]und and not some portion thereof, is created through efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-37 (2d Cir. 2007); *also, e.g., Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir. 1999) (holding that fees should be based on entire settlement fund even though unclaimed funds would revert to defendant); *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997) (same).

Here, Class Counsel negotiated, on behalf of all Class members, total payments up to $84 million, which includes automatic payments to existing CPAY customers, and a user-friendly claims process for former customers, with no supporting documentation required to file a claim, only a very simple form to submit, and multiple ways for the claim to be submitted free of charge. Joint Decl., ¶ 189; Gustafson Decl., ¶ 17. Moreover, Class Counsel has worked diligently with the claims administrator to ensure that nearly all Class members have been

provided with notice of their legal rights, and the opportunity to share in the fruits of this Settlement. In fact, Class Counsel has been sending – and will continue to send – reminder emails to former customers to ensure they are repeatedly advised of their right to submit a claim. Supp. Joint Decl., ¶ 21.

This structure – where current customers are paid automatically and former customers file claims to receive their payments – has been approved in multiple prior class settlements involving payment processors that allegedly overcharged their merchant customers. And, as requested here, the fee awards in such cases have been calculated based on a percentage of the gross cash amount made available to the class, as dictated by controlling Supreme Court precedent discussed above. *See, e.g.*, *Champs Sports Bar & Grill Co. v. Mercury Payment Sys., LLC*, 275 F. Supp. 3d 1350, 1356 (N.D. Ga. 2017) (awarding fee of one-third of gross fund in overbilling case against payment processor); *Teh Shou Kao v. CardConnect Corp.*, No. 16-cv-5707, 2021 WL 698173, *9 (E.D. Pa. Feb. 23, 2021) (same); *Al's Pals Pet Care v. Woodforest Nat'l Bank*, No. 4:17-CV-3852, 2019 WL 387409, *2-4 (S.D. Tex. Jan. 30, 2019) (same). The Court should do the same here and award fees in this case as a reasonable percentage of the gross $84 million cash benefit made available to the Class through the Settlement.

> ### B. One-Third Is a Reasonable Fee Percentage.

Class Counsel seek a fee equal to one-third of the $84 million cash Settlement benefit. The Court has discretion "to determine the resulting amount that constitutes a reasonable award of attorney's fees in a given case." *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622 (8th Cir. 2017). While there is no benchmark for percentage-based fee awards, courts in this Circuit have "frequently awarded attorneys' fees ranging up to 36% in class actions." *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (affirming fee of one-third of $24 million benefit and noting up to 38% may have been reasonable); *also, e.g.*,

*Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865-66 (8th Cir. 2017) (affirming fee of one-third of $60 million fund); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming fee award of 36% of $3.5 million fund); *Lechner v. Mutual of Omaha Ins. Co.*, No. 8:18cv22, 2021 WL 424421, *2 (D. Neb. Feb. 8, 2021) (granting fee request of one-third and finding it to be typical in class action litigation) (Bataillon, J.); *Ray v. Lundstrum*, Nos. 8:10CV199, 4:10CV3177, 8:10CV332, 2012 WL 5458425, *4-5 (D. Neb. Nov. 8, 2012) (approving fee request of one-third of settlement fund and finding it to be reasonable) (Bataillon, J.); *Anderson*, 2021 WL 4307093 at *4 (finding a one-third fee to be "well in line with other attorney's fee awards in this circuit"); *Tussey v. ABB, Inc.*, No. 06-cv-04305, 2019 WL 3859763, *4 (W.D. Mo. Aug. 16, 2019) (noting "[c]ourts in this Circuit [] have frequently awarded attorney fees of 33 1/3%–36% of a common fund" and approving fee award of one-third of $55 million benefit); Gustafson Decl., ¶ 38.

That such fee awards are typical is further supported by Mr. Hughes, who has mediated several hundred class and collective action settlements. Hughes Decl., ¶ 18. According to Mr. Hughes, "[t]he amount of fees that class counsel seek in this matter – one-third of the $84 million settlement amount – is consistent with results of other class and collective actions settlements I have mediated throughout the country, including in the Eighth Circuit." *Id*. Class Counsel's requested fee percentage of one-third of the cash settlement proceeds they obtained for the Class is thus well within the range of reasonable fees approved by courts in this Circuit. *See also* Gustafson Decl., ¶ 38; Domina Decl., ¶ 39.

Courts measure the reasonableness of a requested fee percentage by analyzing the "*Johnson*" factors, namely:

(1) The time and labor required; (2) The novelty and difficulty of the questions;
(3) The skill requisite to perform the legal service properly; (4) The preclusion of

> other employment by the attorney due to acceptance of the case; (5) The customary fee for similar work in the community; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or the circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The undesirability of the case; (11) The nature and length of the professional relationship with the client; and (12) Awards in similar cases.

*Keil*, 862 F.3d at 701 ("To determine the reasonableness of a fee award . . ., district courts may consider relevant factors from the twelve factors listed in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 719-20 (5th Cir. 1974)); *Buckley*, 849 F.3d at 399 (approving district court's reliance on *Johnson* factors when awarding fee based on percentage-of-benefit method); Domina Decl., ¶ 13; Gustafson Decl., ¶ 20. Here, the *Johnson* factors support the requested fee.

1. <u>Substantial Time and Labor Was Required.</u>  The work that was demanded of Class Counsel was extensive.  Indeed, Class Counsel and their teams spent an enormous amount of time on this case – in excess of ***13,200 hours***.  Joint Decl., ¶¶ 13-185; Supp. Joint Decl., ¶ 2.  Their work included but was not limited to extensive pre-suit investigation; the preparation of two complaints, multiple dispositive motions, responses to CPAY's many dispositive motions and petitions, and an appellate brief; the review and evaluation of the more than 450,000 pages of documents that were produced in this action and the substantial written discovery that was exchanged; their work with four different experts; the preparation for and examination or defense of 21 depositions; the analysis of the many substantive rulings of this Court and the Eighth Circuit; the research of governing precedent; detailed trial preparation; the mediation, negotiation, and drafting of the Settlement; the preparation of the approval papers; the work with the settlement administrator on the notice program; and communications with Class members.  Supp. Joint Decl., ¶ 3.  Moreover, to see the Settlement through to final conclusion will necessitate many hours of additional work answering questions from Class members and overseeing cash distributions.  *Id.* at ¶ 8.

All told, Class Counsel's diligent, coordinated work paid great dividends for the Class. Each of the above-described efforts was essential to achieving the Settlement.  Supp. Joint Decl. ¶ 4. The substantial time and labor Class Counsel devoted to prosecuting and settling these actions readily justify the fee that is being requested.  Gustafson Decl., ¶ 25 ("the vast time and effort to adequately prepare the case no doubt drove CPAY to agree to the eleventh-hour settlement, a much higher amount than what was otherwise possible"); Domina Decl., ¶ 17 ("this factor falls squarely in the basket of support for Plaintiffs' fee application").  The first *Johnson* factor supports the requested fee.

        2.    <u>The Issues Involved Were Novel and Difficult.</u>  This case involves complex claims and defenses.  For example, it is very difficult to identify – let alone establish liability based upon – the overcharge practices that lie at the heart of this litigation.  Class Counsel had to decipher a complex industry that defies transparency; comprehend byzantine billing practices; and analyze voluminous documents and data that covered more than a decade. Supp. Joint Decl., ¶ 9; Domina Decl., ¶ 19 ("Credit card processing is a maze").

Moreover, the case presented novel legal issues, such as the enforceability and applicability of the contractual provisions that CPAY includes in its form contracts in an attempt to exculpate itself from overbilling, whether a valid RICO enterprise could be pled, whether the RICO and fraudulent inducement claims presented individual reliance issues that could defeat certification, whether CPAY had sufficient records to allow the Class members to be ascertained and individual damages calculated, and whether a nationwide Class comprised of more than 185,000 merchants could be managed and certified.  Supp. Joint Decl., ¶ 10; Domina Decl., ¶ 22 ("The claims are extraordinarily complicated").  The uncovering of CPAY's purported overbilling and positioning of this case for class certification and a victory on the merits

presented challenges most law firms are simply not able to meet. Gustafson Decl., ¶ 26 ("In my opinion, few attorneys could have uncovered and assess the necessary evidence to challenge CPAY's practices as an overbilling fraud scheme, in violation of RICO").

On appeal, CPAY did challenge and would have continued to challenge this Court's legal rulings by pressing the Eighth Circuit and the Supreme Court to address key issues. Indeed, CPAY demonstrated throughout this litigation that it would challenge and appeal any adverse rulings. For instance, CPAY filed a Rule 23(f) petition at the Eighth Circuit after class certification was granted and separately filed an interlocutory appeal at the Eighth Circuit under the Federal Arbitration Act after an adverse arbitration decision by this Court. When CPAY lost at the Eighth Circuit on its class certification appeal, it then filed a certiorari petition at the United States Supreme Court. CPAY certainly would have challenged other legal rulings by this Court if the Class prevailed at trial. This created considerable risk to the Class and Class Counsel given the novel and complex legal issues involved related to arbitration, the scope of claims, and the amount of the aggregate class damages. The second *Johnson* factor supports the requested fee.

3. <u>Class Counsel Possessed the Necessary Skill to Effectively Litigate the Case.</u> Litigation of this case required counsel highly trained in class action law and procedure as well as counsel familiar with the specialized issues at bar. Supp. Joint Decl., ¶ 11; Domina Decl., ¶ 25. As evidenced by their qualifications and their work litigating the case (Joint Decl., ¶¶ 7-9, 13-185), Class Counsel possess these attributes. Gustafson Decl., ¶ 28 ("Simply put, the skill of Class Counsel was a substantial cause of the $84 million class settlement"). The third *Johnson* factor supports the requested fee.

4.    <u>Class Counsel Were Precluded From Taking on Other Employment.</u>  Class Counsel are boutique litigation firms of small size compared to their adversaries in this litigation. From the outset, Class Counsel worked together and committed the time of highly experienced partners to take the lead prosecuting this case and preparing it for trial.  After W&C committed to act as lead counsel in this litigation, the firm devoted substantial time to litigating this case for more than four and a half years.  In fact, during extended periods of this litigation, certain partners were devoting nearly all of their time to this case.  WK&L also committed substantial time to this litigation, which is noteworthy considering that it is a small firm with only three partners. If Class Counsel had not taken on this case, they would have been able to spend significant time on other matters.  Supp. Joint Decl., ¶ 12.  Indeed, over the last five years, Class Counsel turned down multiple cases because of the time and attention that this case required. *Id.*; Gustafson Decl., ¶ 29 ("This was a big sacrifice by Class Counsel with no guarantee of a successful outcome and that risk warrants a sizeable reward"); Domina Decl., ¶ 27.  The fourth *Johnson* factor supports the requested fee. *Van Gemert*, 444 U.S. at 478 (finding as a factor in support of fee that "the law firms prosecuting the case are of small size . . . and thus the time devoted to the class action precludes other employment").

5.    <u>The Requested Fee Is Customary.</u>  Contingency cases in the Eighth Circuit typically call for a fee of one-third the recovery and range up to 40 percent.  Gustafson Decl., ¶ 30; Domina Decl., ¶ 28.  As a result, the fee requested here is reasonable, customary, and standard in this Circuit.  Moreover, consistent with this usual practice, Class Counsel and each of the Class Representatives entered into contingent fee agreements providing for payment of one-third to forty percent of any recovery.  Supp. Joint Decl., ¶ 14.  The willingness of the Class Representatives to enter into such an agreement provides further evidence the requested award is

reasonable. *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) ("The presence of a pre-existing fee agreement may aid in determining reasonableness"). Also, the fee sought here matches the fee typically awarded by courts in similar cases of this nature. *See* Background Section I.B, *supra*, and Argument Section I.B(12), *infra*; Domina Decl., ¶¶ 28-29; Gustafson Decl., ¶ 30. The fifth *Johnson* factor supports the fee.

    6. <u>These Actions Were Prosecuted Entirely on a Contingent Basis.</u> Because Class Counsel took these cases on a contingency fee basis, had they not achieved a recovery, they would have received nothing and, in fact, would have suffered substantial out-of-pocket losses because they were advancing all the litigation expenses, which amounted to more than $1.2 million at the time of Settlement and would have been much higher had the case been tried and proceeded through the inevitable appeals. Supp. Joint Decl., ¶¶ 15, 23. Uncompensated expenditures of such magnitude can severely damage or destroy firms of the small size of Class Counsel's firm. *Id.* Such risk must be compensated and is a critical factor in analyzing the reasonableness of a fee. *See, e.g.*, *Muehler*, 617 F. Supp. at 1375; Gustafson Decl., ¶ 31; Domina Decl., ¶¶ 30-31.

    It was extremely risky for Class Counsel to bring these cases both in terms of (a) the substantial time commitment and financial investment required to successfully prosecute the case and prepare it for trial and (b) difficult and unsettled legal and factual issues. Supp. Joint Decl., ¶¶ 16-17. To even have a chance to prevail, Class Counsel knew they would need to overcome the exculpatory provisions buried in CPAY's form contracts despite unsettled law on this issue (law that would subsequently become more difficult as the case progressed – *see Zam & Zam Super Market, LLC v. Ignite Payments, LLC*, 736 Fed. Appx. 274, 277-78 (2d Cir. 2018) (affirming dismissal of breach claim on grounds merchant did not provide timely notice of

challenged fees in accordance with contract)).  Additionally, it is always challenging to certify a nationwide class action, especially given CPAY's claims that the contracts were not uniform and had varied terms.  Supp. Joint Decl., ¶ 16-17; Domina Decl., ¶ 30 (certifying a nationwide class "is a challenging undertaking in a complex case such as this one, especially when the defendant is able to make an interlocutory appeal in the middle of the case to the Eighth Circuit").   Even if they could overcome such hurdles, Class Counsel would then have to fend off CPAY's numerous defenses as to the merits of the case, prevail at trial, and then hold onto that result through an inevitable appeal.  Joint Decl., ¶¶ 197-204 (detailing various risks had the case been tried and proceeded to appeal).

Such dispositive risks cannot be ignored.  *Tussey*, 2019 WL 3859763 at *4 ("Not only was the claim novel, but Class Counsel was required to fight for over a decade with well-funded defendants represented by highly-qualified national attorneys to achieve this result. Unless that risk is compensated with a commensurate award, no firm, no matter how large or well-financed, will have the incentive to consider pursuing a case such as this").  Further, such risks must be evaluated as of the time Class Counsel filed suit, not in hindsight after they prevailed on many unsettled issues.  *See, e.g.*, *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988), *cert. denied*, 493 U.S. 810 (1989) ("The point at which plaintiffs settle with defendants . . . is simply not relevant" to evaluating class counsel's risk); Domina Decl., ¶ 36.  The sixth *Johnson* factor supports the requested fee.

7. <u>Class Counsel Worked Under Time Pressures.</u>  Class Counsel does not contend that this factor justifies either a higher or lower fee as time pressure in cases of this sort is commonplace.

8.      <u>Class Counsel Achieved an Excellent Settlement.</u>  Class Counsel achieved excellent monetary relief for all Class members.  Indeed, the Settlement – which recovers a benefit of up to $84 million in cash for the 185,884 member Class – is believed to be the largest cash settlement ever achieved in a class action seeking redress for payment processor overbilling.  Joint Decl., ¶ 12.  The $84 million amount represents approximately 42% of the Class's $201.1 million "out-of-pocket" losses (as estimated by Plaintiffs' damages expert) and more than the full amount of damages that would have been sought at trial attributable to CPAY's affirmative misrepresentations to Class members.  *Id.* at ¶ 208.

This recovery was only made possible because of Class Counsel's skill and effort transforming this case from a simple breach of contract action to a fraud/RICO case.  Gustafson Decl., ¶ 33 ("Class Counsel's efforts radically changed the scope of the claims and, as a result, the value of the case"); Domina Decl., ¶ 33 (noting Class Counsel's efforts in this regard added tens of millions of dollars in benefit to the Class); Supp. Joint Decl., ¶ 19.  The $84 million recovery "is an excellent result in this situation."  Domina Decl., ¶ 35.  If approved, Class members will receive their payments in a few months, as opposed to years down the line (if at all).  The eighth *Johnson* factor supports the requested fee.

9.      <u>Class Counsel Are Highly Experienced and Are Well Respected.</u>  WK&L and W&C have been litigating class cases for many years (including cases against payment processing companies) and have been appointed lead counsel, class counsel, and to leadership positions in many prior cases.  Joint Decl., ¶¶ 7-9; Domina Decl., ¶¶ 38-42; Gustafson Decl., ¶ 34.  Their efforts have been lauded by prior courts.  *E.g.*, *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 307 (S.D. Miss. 2014) (finding WK&L's training and participation "added immense

value to the representation of this large Settlement Class"). Class Counsel's knowledge and experience was likely essential in reaching the result they have achieved here.

In evaluating the quality of representation by Class Counsel, the Court should also consider the quality of opposing counsel. *Tussey*, 2019 WL 3859763 at *4. CPAY has been represented by skilled counsel from three prominent law firms. Supp. Joint Decl., ¶ 18; Gustafson Decl., ¶ 35 ("These lawyers all have excellent reputations for defending complex class action cases. My review of defense counsel's work in this litigation indicates that such reputations are well-deserved"). CPAY's counsel were highly skilled adversaries and their tenacious representation of CPAY makes the Settlement all the more impressive. Supp. Joint Decl., ¶ 18; Gustafson Decl., ¶ 35 ("Class Counsel should be rewarded for achieving the settlement for the class in the face of tough, determined adversaries"). The ninth *Johnson* factor supports the requested fee.

10. The Case Qualifies as "Undesirable." The risk of non-recovery and the requirement that counsel front substantial costs has been held to make a case undesirable, warranting a higher fee. *Morales v. Farmland Foods, Inc.*, No. 08-cv-504, 2013 WL 1704722, *9 (D. Neb. April 18, 2013) (Bataillon, J.) ("the court agrees with the plaintiffs that this type of case is 'undesirable' to some extent because counsel must incur substantial fees and expenses with no guarantee of recovery"). Here, all such criteria are present. Gustafson Decl., ¶ 36; Domina Decl., ¶ 44. The tenth *Johnson* factor supports the requested fee.

11. The Relationships with the Client. Typically, the relationship with the client "has little relevance in the class setting given that the 'client' is the class." 5 Newberg on Class Actions § 15:77 n.15 (5th ed. 2015). Consequently, courts often do not consider it. *See e.g., In re: Motor Fuel Temperature Sales Practices Litig.*, 07-MD-1840-KHV, 2016 WL

4445438, *9 (D. Kan. Aug. 24, 2016) (explaining that the relationship with the client factor was not applicable in this class action case); *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 503 (N.D. Miss. 1996) (same). This factor thus does not counsel in favor of, or against, the requested fee. Gustafson Decl., ¶ 37; Domina Decl., ¶ 46.

      12. <u>The Requested Fee Comports with Awards in Similar Cases.</u> The fee sought here matches the fee typically awarded in similar cases. *See* Section I(B), *supra* (collecting cases); Hughes Decl., ¶¶ 18-19; Gustafson Decl., ¶¶ 38-39; Domina Decl., ¶¶ 47-48. Indeed, legions of decisions in this Circuit have found that a fee equal to one-third of the cash benefit derived from the Settlement is appropriate. *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1061 (D. Minn. 2010) (finding $5,445,000 in attorneys' fees, representing 33% of settlement fund, to be in line with fees approved by Eighth Circuit); *Carlson v. C.H. Robinson Worldwide, Inc.*, No. CIV 02-3780 JNE/JJG, 2006 WL 2671105, *8 (D. Minn. Sept. 18, 2006) (approving fee of $5,325,000, which was equal to 35.5% of the settlement fund); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 286 (D. Minn. 1997) (approving fee of one-third of $86 million recovery). One-third has also been the most oft-awarded fee percentage in prior class settlements involving similar allegations of overbilling against payment processors. *See, e.g.*, *Mercury Payment Sys.*, 275 F. Supp. 3d at 1356 (awarding one-third of gross $52 million cash benefit); *CardConnect Corp.*, 2021 WL 698173 at *8-10 (awarding one-third of gross $7.65 million cash benefit); *Woodforest Nat'l Bank*, 2019 WL 387409 at *4-5 (awarding one-third of gross $15 million cash benefit); *Kelwin Inkwel, LLC v. PNC Merchant Servs. Co., LLP*, No. 17-cv-6255-FB, slip op. at 8-10 (E.D.N.Y. April 12, 2022) (awarding one-third of gross $10 million cash benefit); *Alghadeer Bakery & Market, LLC v. Worldpay US, Inc.*, No. 16-

cv-3627-MLB, slip op. at 9-11 (N.D. Ga. June 3, 2020) (awarding one-third of gross $15 million cash benefit).  The twelfth *Johnson* factor also supports the requested fee.

## II.    <u>The Expense Request Is Appropriate.</u>

Class Counsel also request reimbursement for a total of **$1,209,102.88** in litigation expenses.  Settlement ¶ 80-82; Supp. Joint Decl., ¶ 23; *also, e.g.*, *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970); *Yarrington*, 697 F. Supp. 2d at 1067 (D. Minn. 2010) (expenses that are relevant to the litigation and reasonable in amount should be reimbursed from the common fund) (citing *Mills*).  The requested sum is equivalent to specific out-of-pocket expenses that were incurred while prosecuting and settling the case and includes expert witness fees, court reporter and deposition costs, jury consultant fees, costs of providing class notice, document storage and hosting fees, legal research fees, mediator fees, coach-class travel costs, filing and service fees, and necessary administrative expenses (i.e., PACER charges, copies, postage, etc.). Supp. Joint Decl., ¶ 23(a)-(j) (itemizing such expenses).  All such expenses are reasonable and were incidental and necessary to the successful prosecution of this case.  *Id.* at ¶ 24.  The requested expenses should be approved.

## III.   <u>Service Awards Are Warranted for the Class Representatives.</u>

"Courts often grant service awards to named plaintiffs in class action suits to 'promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.'"  *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (quoting *Yarrington*, 697 F. Supp. 2d at 1068).  Indeed, "[c]ourts in this circuit regularly grant service awards of $10,000 or greater."  *Caligiuri*, 855 F.3d at 867; *also e.g.*, *Hashw v. Department Stores Nat'l Bank*, 182 F. Supp. 3d 935, 952 (D. Minn. 2016) (finding service award of $15,000 was appropriate); *Zilhaver v. UnitedHealth Group, Inc.*, 646 F.Supp.2d 1075, 1085 (D. Minn. 2009) (granting named plaintiffs $15,000 each in service awards from common fund); *Thornburg v.*

*Open Dealer Exchange, LLC*, No. 17-06056-CV-SJ-ODS, 2019 WL 3291569, *3 (W.D. Mo. July 22, 2019) (approving $15,000 service award).

Pursuant to the Settlement, Class Counsel request, and CPAY does not oppose, service awards of $15,000 for each of the two Plaintiffs/Class Representatives. Settlement ¶ 83; Joint Decl., ¶ 194. Like the fee award, these amounts were not negotiated until after consensus was reached on other material terms of the Settlement. Joint Decl., ¶ 184; Hughes Decl., ¶ 17.

The actions of the Class Representatives demonstrate the reasonableness of the requested service awards. Joint Decl., ¶ 194. Each Plaintiff took time away from the day-to-day operation of its small businesses to devote substantial time and effort to the litigation, including by making themselves available for conferences with our team, gathering and producing all of their written documentation, responding to written discovery, sitting for lengthy depositions and deposition preparation, keeping themselves abreast of the proceedings for more than four-and-a-half years, preparing for trial and travel to Nebraska for up to two weeks, and subjecting themselves to the time, expense, and risk of complex class action litigation. *Id.* Indeed, both Plaintiffs exposed themselves to the risk and media attention that accompanies suing a powerful company such as CPAY.

But for the Class Representatives' courageous service, other Class members would have received nothing. The requested service awards will encourage other small businesses to bring future representative lawsuits, are supported by precedent, and should be approved.

## CONCLUSION

For the foregoing reasons, Class Counsel request that the Court grant this motion and award one-third of the $84 million cash settlement proceeds as attorneys' fees, approve $1,209,102.88 in reimbursement of costs and litigation expenses, and approve the service awards of $15,000 per Class Representative.

Dated:  May 6, 2022

Respectfully submitted,

**WAGSTAFF & CARTMELL, LLP**

/s/ *Tyler W. Hudson*
Tyler W. Hudson        MO#53585
Eric D. Barton          MO#53619
Melody R. Dickson     MO#61865
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100
thudson@wcllp.com
ebarton@wcllp.com
mdickson@wcllp.com

/s/ *Matthew C. Klase*
E. Adam Webb (Ga. Bar No. 743910)
Matthew C. Klase (Ga. Bar. No. 141903)
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
(770) 444-0773
Adam@WebbLLC.com
Matt@WebbLLC.com

***Counsel for Plaintiffs and the Class***

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Tyler W. Hudson*

## CERTIFICATE OF COMPLIANCE

I hereby affirm that the foregoing brief contains 9,818 words, as determined by the word-count function of Microsoft Word, including the caption, all text, headings, footnotes, and quotations, and therefore complies with NECivR 7.1(d).

*/s/ Tyler W. Hudson*